LEIGLAND ET AL., APPELLANTS, *v.* RUNDLE LAND & ABSTRACT CO., ET AL., RESPONDENTS.

(No. 4,784.)

(Submitted May 27, 1922. Decided July 3, 1922.)

[208 Pac. 1075.]

*Mechanics' Liens—Building Contracts—Time Limit—Extension —Varying Writing by Parol—Damages—Estoppel—Waiver —Measure of Damages—Equity—Findings.*

Appeal and Error—Equity—Findings—When Conclusive.
  1.  The findings of a district court in equity cases will not be disturbed by the supreme court, except where the evidence clearly preponderates against them.

Contracts in Writing—Varying by Parol Testimony—Rule.
  2.  A written agreement must be considered as containing all prior oral ones concerning its subject matter and its terms may therefore not be varied by oral testimony.

Building Contracts—Time Limit—Extension—Varying Writing.
  3.  Where in an action by a building contractor to foreclose a mechanic's lien, in which defendant set up a counterclaim for damages for failure to· complete the building within the time stipulated, the contract provided that no additional time should be allowed unless request therefor was presented in writing to the

[64 Mont. 154.]

architect, and plaintiff failed to make such request though the owner had directed alterations to be made, he was precluded from asserting that before signing the contract defendant had orally agreed that the penalty therein provided for would not be enforced.

Same—Alterations—Failure to Ask for Extension of Time—Effect.

4. Where a building contract provides that in case alterations are directed by the owner which the contractor deems unreasonable he may make objections to the architect or the owner, and he raises no objections but agrees to make them and asks for no additional time in which to make them, he will not be heard to say in defense to an action for damages for failure to complete the work within the time stipulated that they were unreasonable.

Same—Expiration of Time Limit—Estoppel—Waiver.

5. Permission by the owner of a building in course of construction to the contractor to go on with the work after expiration of the date on which it was to be completed and the making payments of monthly estimates did not estop the former from claiming damages for failure to complete it on time or constitute a waiver of the breach.

Same—Measure of Damages.

6. In an action in which damages are sought for failure to complete a building within the time provided in the contract, the measure of damages is the rental value less the expenses of maintenance, such as heat, light, *etc.*, from the date on which the building should have been completed to the date on which it was turned over to the owner, which expenses would have been incurred had it been completed on time and used by tenants during that time.

Mechanics' Liens—Verification—Sufficiency.

7. The requirement of section 8340, Revised Codes, that a mechanic's lien must be verified as a "just and true account of the amount due, after allowing all credits," *etc., held* to have been met by a certification that the notice of lien and statement of account was true; that the statement contained a full and true amount due the lienor, *etc.,* after allowing all credits and offsets, signed by one of two partners and sworn to before a notary public.

*Appeals from District Court, Valley County; T. A. Thompson, Judge.*

SUIT by H. S. Leigland and another against the Rundle Land & Abstract Company and another. From the judgment for defendants and an order denying their motion for new trial, plaintiffs appeal. Affirmed in part, and remanded for further hearing and modification on the question of named defendant's damages.

*Messrs. Freeman, Thelen & Frary* and *Mr. Thomas Dignan,* for Appellants, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

Respondents argue that the building should have been completed by October 1, 1916, notwithstanding delays, as the con-

tract provided a method by which this delay could be allowed for, and that since the appellants had never asked for an extension of time within the provisions of Article VII thereof, appellants were bound to complete the building by October 1. To this the appellants reply that the delays were all caused by respondents, who showed by their conduct and representations an intention to waive such application for an extension of time, and that the conduct of the respondent was such as to render it inequitable to call for a strict compliance with Article VII of the agreement by appellants. (*Schmulbach* v. *Caldwell*, 196 Fed. 16, 28, 115 C. C. A. 650; *Huber* v. *St. Joseph's Hospital*, 11 Idaho, 631, 83 Pac. 769.) These changes being such as not contemplated in the original contract, appellants' obligation was to finish the building as originally contracted for, together with the alterations and additions within a reasonable length of time, which appellants did. (9 C. J. 787; *Maurer* v. *Burmingham School Dist. No. 1*, 186 Mich. 223, 152 N. W. 999; *Scheible* v. *Klenk*, 171 Mich. 1, 137 N. W. 106; *Lilly* v. *Person*, 168 Pa. 219, 32 Atl. 23; *White* v. *Braddock School Dist.*, 159 Pa. 201, 28 Atl. 136; *Mason* v. *Rempe* (Tex. Civ. App.), 41 S. W. 694; *Wilkens* v. *Wilkenson* (Tex. Civ. App.), 41 S. W. 178; *Corse* v. *Linke*, 147 Wis. 410, 133 N. W. 598; *Carter* v. *Root*, 84 Neb. 723, 121 N. W. 952.)

In the case of *Wortman* v. *Montana Cent. Ry. Co.*, 22 Mont. 266, 56 Pac. 316, it was held that allowing the builder to work after the time specified for the completion of the structure, gave rise to a presumption that the element of time had been waived, and that the contractors should have a reasonable time after the date set forth in the contract for the completion of the work, in which to complete the work. (*Kenny* v. *Monahan*, 169 N. Y. 591, 62 N. E. 1096; *Phillips etc. Construction Co.* v. *Seymour*, 91 U. S. 646, 23 L. Ed. 343 [see, also, Rose's U. S. Notes].)

Respondents failed to prove the net rental value, and which is the only amount which they are entitled to, but proved the

gross rental income, and under such a condition of facts the decision of the court in the case of *Wing & Bostwick Co.* v. *United States Fidelity & G. Co.*, 150 Fed. 677, is pertinent. The evidence shows what the building could have actually rented for and does not take into consideration any item of expense or maintenance which the owner was to provide, such as heat, light, janitor and engineer expense, and any such items under the term of maintenance which would be deducted from any gross rental income. Under it, they have completely failed to prove the damages and are therefore entitled to none. (*Haggerty Bros.* v. *Lash & Shaughnessy*, 34 Mont. 520, 87 Pac. 907.)

*Messrs. Norris, Hurd, Rhoades & Hallett*, for Respondents, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

Failure of appellants to perform the conditions of the contract relative to obtaining an extension of time for the completion of the building precludes them from asserting that they completed the building within the time provided. (*Slaughter* v. *Chrisman & Nesbit* (Tex. Civ. App.), 152 S. W. 205; *Davis* v. *La Crosse Hospital Assn.*, 122 Wis. 579, 1 Ann. Cas. 970, 99 N. W. 351; *Coorsen* v. *Ziehl*, 103 Wis. 381, 79 N. W. 562; *Ashland L. S. & C. Co.* v. *Shores*, 105 Wis. 122, 81 N. W. 136; *Kelly* v. *Fejervary* (Iowa), 78 N. W. 828; *Van Buskirk* v. *Board of Education*, 78 N. J. L. 650, 75 Atl. 909; *Charleston Lumber Co.* v. *Friedman*, 64 W. Va. 151, 61 S. E. 815; *Feeney* v. *Bardsley*, 66 N. J. L. 239, 49 Atl. 443; *Curry* v. *Olmstead*, 26 R. I. 462, 59 Atl. 392.)

Under contracts, such as the one involved herein, it is almost uniformly held that where the contractor has not presented his written claim for an extension of time and such extension has not been granted by the architect, the contractor is not entitled thereto. (*Chapman Decorative Co.* v. *Security etc. Co.*, 149 Fed. 189, 79 C. C. A. 137; *Kelly* v. *Fejervary* (Iowa), 78 N. W. 828; *Ward* v. *Haren*, 139 Mo. App. 8, 119 S. W. 446; *Davis* v. *La Crosse Hospital Assn., supra; Curry* v. *Olmstead,*

26 R. I. 462, 59 Atl. 392; *Charleston Lbr. Co.* v. *Friedman,*
64 W. Va. 151, 61 S. E. 815; *Feeney* v. *Bardsley,* 66 N. J. L.
139, 49 Atl. 443; *J. G. Wagner Co.* v. *Cawker,* 112 Wis. 532,
88 N. W. 599; *Wait* v. *Stanton,* 104 Ark. 9, 147 S. W.
446; *Equitable Real Estate Co.* v. *National Surety Co.,*
133 La. 448, 63 South. 104; *Florida etc. R. Co.* v. *Southern
etc. Co.,* 112 Ga. 1, 37 S. E. 130; *Richard Deeves & Son* v.
*Manhattan Life Ins. Co.,* 195 N. Y. 324, 88 N. E. 395; *Wallis
& Co.* v. *Inhabitants of Wenham,* 204 Mass. 83, 17 Ann. Cas.
644, 90 N. E. 396; *Reichenbach* v. *Sage,* 13 Wash. 364, 52 Am.
St. Rep. 51, 43 Pac. 354.)

The architects were without authority to waive on behalf of
the respondent compliance with the terms and provisions of
the contract by appellants. (*Gray* v. *La Societe etc.,* 131 Cal.
566, 63 Pac. 848; *Langley* v. *Rouss,* 185 N. Y. 201, 7 Ann. Cas.
210, 77 N. E. 1168; *Baltimore & O. R. Co.* v. *Jolly Bros.,* 71
Ohio St. 92, 72 N. E. 888; *Campbell* v. *Cincinnati South. Ry.
Co.* (Ky.), 6 S. W. 337; *Sanitary District* v. *McMahon &
Montgomery Co.,* 110 Ill. App. 510; *Van Buskirk* v. *Board of
Education,* 78 N. J. L. 650, 75 Atl. 909.)

Waiver of provision as to time of performance does not
waive owner's claim for damages by reason of failure to per-
form within time. (*Bryson* v. *McCone,* 121 Cal. 153, 53 Pac.
637; *Snell* v. *Cottingham,* 72 Ill. 161; *Crocker-Wheeler Co.* v.
*Varick Realty Co.,* 43 Misc. Rep. 645, 88 N. Y. Supp. 412;
*Dunn* v. *Steubing,* 120 N. Y. 232, 24 N. E. 315; *Granniss &
Hurd L. Co.* v. *Deeves,* 72 Hun, 171, 25 N. Y. Supp. 375;
*Northwestern Steam Boiler etc. Co.* v. *Great Lakes E. Works,*
181 Fed. 38, 104 C. C. A. 52; *Lawrence County* v. *Stewart,*
72 Ark. 525, 81 S. W. 1059; *Smith* v. *Smith,* 45 Vt. 433;
*Cowles* v. *Hagerman,* 15 N. M. 600, 110 Pac. 843.)

Respondent is entitled to recoup in the amount representing
its loss of rent. When the construction of a building has been
delayed, there being no extension of time or waiver, the dam-
ages are the loss of rent. (*McIntyre* v. *Barnes,* 4 Colo. 285;
*Cannon* v. *Hunt,* 113 Ga. 501, 38 S. E. 983; *Bird* v. *American*

*Surety Co.,* 175 Cal. 625, 166 Pac. 1009; *Korf* v. *Lull,* 70 Ill.
420; *Novelty Iron Works* v. *Capital City O. Co.,* 88 Iowa, 524,
55 N. W. 518; *John Hutchinson M. Co.* v. *Pinch,* 91 Mich.
156, 30 Am. St. Rep. 463, 51 N. W. 930; *Consaul* v. *Sheldon,*
35 Neb. 247, 52 N. W. 1104; *Hexter* v. *Knox,* 63 N. Y. 561;
*Savage* v. *Glenn,* 10 Or. 440; *Rogers* v. *Bemus,* 69 Pa. St.
432; *Smith* v. *Gunn,* 57 Tex. Civ. App. 339, 122 S. W. 919;
*White et al.* v. *McLaren et al.,* 151 Mass. 553, 24 N. E. 911;
*Beck & Pauli Lithographing Co.* v. *Colorado Milling & Elev.
Co.,* 52 Fed. 700, 3 C. C. A. 248.)

MR. COMMISSIONER COMER prepared the opinion of the
court.

This is an action in equity, brought by plaintiffs and appel-
lants, H. S. Leigland and M. S. Kleppe, copartners, against
the defendants and respondents, the Rundle Land & Abstract
Company, a corporation, and the Union Bank & Trust Com-
pany, a corporation, to foreclose a certain mechanics' lien
against the property owned by the defendant Rundle Land &
Abstract Company in Glasgow, Montana. The defendant
Union Bank & Trust Company was joined as a party defend-
ant, as it claimed some interest in the property, but no ap-
pearance was made by it in the action, and the case was tried
between the plaintiffs and the defendant Rundle Land & Ab-
stract Company upon the plaintiffs' complaint, the answer of
the defendant and respondent Rundle Land & Abstract Com-
pany, and the reply of the plaintiffs. The complaint alleges
that on March 30, 1916, a contract in writing for the con-
struction of a certain three-story building in accordance with
certain plans and specifications was entered into between the
plaintiffs and the defendant Rundle Land & Abstract Com-
pany, which we will hereafter designate as the defendant; that
the plaintiffs were to furnish all of the labor and materials,
except the heating and plumbing, for the sum of $76,250; that
on May 16, 1916, an additional contract was entered into pro-
viding for certain alterations, changes, and additions in the

building, and an additional consideration of $586; that on May 29, 1916, certain other alterations, changes and additions were agreed upon, the plaintiffs to have an additional consideration of $3,090; that certain other changes were made, requiring work and material of the value of $408. The original contract is a standard form adopted by the American Institute of Architects and the National Association of Builders, and the portions thereof which require interpretation in this case are as follows:

"Art. III. No alterations shall be made in the work except upon written order of the architects; the amount to be paid by the owners or allowed by the contractors by virtue of such alterations to be stated in said order. Should the owners and contractors not agree as to the amount to be paid or allowed, the work shall go on under the order required above, and, in case of failure to agree, the determination of said amount shall be referred to arbitration, as provided for in Article XII of this contract."

"Art. VI. The contractors shall complete the several portions, and the whole of the work comprehended in this agreement by and at the times hereinafter stated, to-wit: They will complete the entire building ready for occupancy on or before the 1st day of October, 1916."

"Art. VII. Should the contractors be delayed in the prosecution or completion of the work by the act, neglect, or default of the owners, of the architects, or of any other contractors employed by the owners upon the work, or by any damage caused by fire or other casualty for which the contractors are not responsible, or by combined action of workmen in no wise caused by or resulting from default or collusion on the part of the contractors, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined and fixed by the architects; but no such allowance shall be made unless

a claim therefor is presented in writing to the architects within forty-eight hours of the occurrences of such delay.''

The specifications are a part of the contract and provide with reference to changes and extra work as follows: ''The owners may at any time direct any reasonable changes in the structure, the material, and finish therefor as may be deemed necessary, and the same shall not affect the validity of this contract, the difference in value or time of completion, if any for such changes, deviations, additions, or omissions, shall be agreed upon in writing, and no material shall be furnished or labor performed in the fulfillment of this work by any contractor employed thereon, which is extra work or thought to be extra work involving additional expense to the owner, unless an estimate for the same is submitted to the architects and authorized in writing, with the approval of the owners. In case no claim is made by contractor at the time of making any change, it will be assumed that no extra cost is involved or changes in time of completion.''

The plaintiffs further allege that they completed the building on March 1, 1917, but it was ready for use and occupancy before that time, and that, while the date of the completion in said contract is fixed as October 1, 1916, defendant may not now claim any damages from plaintiffs by reason of so failing to complete the same by the time fixed in the contract because prior to the signing of said agreement, and on March 30, 1916, the plaintiffs advised defendant that by reason of business conditions they would not be able to complete the building by October 1, 1916, and therefore objected to signing a contract providing for the completion of the building by October 1, 1916, and containing a penalty clause of $25 for each day it was uncompleted after that time; that thereupon defendant agreed to the elimination of the penalty clause, and that the defendant ''then falsely and fraudulently represented to the said plaintiffs that the said company desired the said clause providing for the completion of the said building by

October 1, 1916, to remain in the contract as finally agreed upon, for the sole purpose of being able to show to any prospective lessees of the said building about the time when said building would be completed, and the said company then further falsely and fraudulently represented to these plaintiffs that the said time provision, calling for the completion of the said building by October 1, 1916, would not be enforced or taken advantage of by the said Rundle Land & Abstract Company as against these plaintiffs, it being then understood and agreed by and between the said plaintiffs and the said defendant Rundle Land & Abstract Company that the said plaintiffs should do the best they could to get said building completed as soon as possible, and as near October 1, 1916, as they could under existing conditions as aforesaid, anything in the contract to the contrary notwithstanding''; that defendant knew said representations were false and untrue and were made with the intent that plaintiffs should rely upon them; that plaintiffs did rely upon them and sign the contract; that defendant is now estopped to claim the contract has been breached by failure to complete the same by October 1, 1916; that, when plaintiffs were notified of the alterations, changes and additions, they notified defendant that they would require a longer time to complete the building; that defendant informed them that they would have to do the best they could to complete it in as short a time as possible, ''which said proposition as to the completion of the said building was accepted by the plaintiffs, and the same was thereupon mutually agreed to orally by all of the parties concerned''; that defendant knew that, by reason of the alterations, changes, and additions, the building could not be completed by October 1st, and that plaintiffs relied upon the representations of the defendant, and that by reason of such reliance plaintiffs were prevented from demanding in writing an additional time for the completion of said building; that said building was completed within a reasonable time under the conditions prevailing, considering the delays occasioned by such alterations, changes and

additions. Plaintiffs allege the making and filing of its mechanic's lien, and that there is now a balance of $7,725.85.

Defendant admits the making of the contract and agreements for the changes, but denies the alleged oral agreements with reference to the extension of time for completing the building and counterclaims for $7,222.70 as the rental value of the building from October 1, 1916, to January 20, 1917, which should be offset against the balance alleged by the plaintiffs to be due them. The court found in favor of the defendant and that the usable rental value of the building was the sum of $7,222.70, and that this sum should be offset against the plaintiffs' claim; that the plaintiffs had, prior to the commencement of this action, paid the defendant all that is due, either in money or credit, by deductions which the defendant was entitled to make; that the lien is invalid; that the defendant have judgment dismissing the action.

Twenty-five exceptions to the findings of the district court are made, and sixteen specifications of error are alleged.

The district court held that the contract was fairly and openly entered into and was free from misrepresentation or fraud, and that the plaintiffs voluntarily and without any inducement executed said contract; that the provision of said contract relating to the completion of said building and providing for the completion thereof on or before October 1, 1916, was at all times after the execution of said contract, and still is, valid, and .was one of the provisions of said contract which said plaintiffs were required to perform as in said contract set forth. Error is predicated upon these findings. The evidence is conflicting as to what was said and done at the time the original contract was entered into, and also conflicting as to oral agreements for extension of time alleged to have been made after the execution of the original agreement, on March 30. The first question presented is whether these findings of fact, made by the trial court, are supported by the evidence.

The findings of a district court in equity cases will not be
[1]    reversed by the supreme court except where the evidence

clearly preponderates against them. (*Bosanatz* v. *Ostronich,* 57 Mont. 197, 187 Pac. 1009.)

In *Gray* v. *Grant,* 62 Mont. 452, 206 Pac. 410, Mr. Justice Galen, in construing section 8805, Revised Codes of 1921, said: "Under section 8805 of the Revised Codes of 1921, the duty is imposed upon this court to determine questions of fact in equity cases, unless for good reason a new trial or the taking of additional evidence in the district court be ordered. In approaching final decision of this case we are not unmindful that, notwithstanding the provisions of the section above alluded to, it is the settled rule that this court will hesitate to overturn findings based upon substantially conflicting evidence, justifying an inference in favor of either party. (*Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Delmo* v. *Long,* 35 Mont. 139, 88 Pac. 778; *Watkins* v. *Watkins,* 39 Mont. 376, 102 Pac. 860; *Copper Min. & S. Co.* v. *Butte & Corbin etc. Min. Co.,* 39 Mont. 487, 133 Am. St. Rep. 595, 104 Pac. 540; *Murray* v. *Butte-Monitor T. M. Co.,* 41 Mont. 449, 110 Pac. 497, 112 Pac. 1132; *Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76; *In re Colbert's Estate,* 51 Mont. 455, 153 Pac. 1022.)''

Without reviewing all the evidence in this case, we are of the opinion, after a careful examination of it, that it does not preponderate against the findings of fact made by the trial judge, and that there is substantial evidence to support such findings.

However, the facts pleaded with reference to the oral agree-
[2] ment made prior to or at the time of the signing of the contract of March 30 do not warrant plaintiffs any relief, for it is an attempt to vary the terms of a written agreement by parol evidence.

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.'' (Sec. 7520, Rev. Codes 1921.)

The terms of the agreement were reduced to writing by the parties and under section 10517, Revised Codes of 1921, the written agreement is to be considered as containing all of those terms, and no evidence of the terms of the agreement other than the contents of the writing can be given except in the cases mentioned in subdivisions 1 and 2 of said section. This oral agreement is not collateral to, but a part of, the original agreement. (*Kelly* v. *Ellis,* 39 Mont. 597, 104 Pac. 873.) The plaintiffs in this case may not now say that the original written contract does not contain all the terms of the agreement, because they cannot bring themselves within either of the exceptions noted in the statute. (Sec. 10517, Rev. Codes 1921.)

Were plaintiffs required to make a written demand for additional time to complete the building? Article VII of the original contract is set out in this opinion, and an examination of it discloses that under its terms no additional time shall be allowed unless a claim therefor is presented in writing to the architects. No claim for additional time was made in writing. Our attention is called to the paragraph of the specifications heretofore set out in this opinion, and plaintiffs urge that, since the specifications are a part of the contract, we have two provisions, each separate, each providing a manner of its own for the granting of an extension of time. But this clause in the specifications does not support plaintiffs' contention. It is not in conflict with the contract. It provides that the owner may direct reasonable changes, but that the difference in time of completion shall be agreed upon in writing; but the evidence in this case does not show any agreement in writing for an additional time, and, if such a state of facts were shown, a different case would be presented. Plaintiffs have not brought themselves within the terms of this clause in the specifications, because no demand was made for, and no agreement in writing was entered into, stipulating an extension of time, nor have they brought themselves within the purview of Article VII of the contract, as they made no demand in writing for additional time. (*Hiller* v. *Daman,* 183

Mo. App. 315, 166 S. W. 869; *Wagner v. Cawker*, 112 Wis. 532, 88 N. W. 599; *Slaughter v. Chrisman* (Tex. Civ. App.), 152 S. W. 205; *Feeney v. Bardsley*, 66 N. J. L. 239, 49 Atl. 443; *Davis v. La Crosse Hospital Assn.*, 122 Wis. 579, 1 Ann. Cas. 970, 99 N. W. 351; *Kelly v. Fejervary* (Iowa), 78 N. W. 828; *Wait v. Stanton & Collamore*, 104 Ark. 9, 147 S. W. 446; *Van Bustkirk v. Board of Education*, 78 N. J. L. 650, 75 Atl. 909; *Equitable Real Est. Co. v. National Surety Co.*, 133 La. 448, 63 South. 104; *Charleston Lbr. Co. v. Friedman*, 64 W. Va. 151, 61 S. E. 815; *Florida N. R. Co. v. Southern Supply Co.*, 112 Ga. 1, 37 S. E. 130; *Chapman Decorative Co. v. Security Mutual Life Ins. Co.*, 149 Fed. 189, 79 C. C. A. 137.)

Plaintiffs contend that under the case of *Wortman v. Kleinschmidt*, 12 Mont. 316, 30 Pac. 280, the parties could make an oral agreement by mutual consent and modify the original written contract. This doctrine was upheld in a later case, *Inter-State Lumber Co. v. Western Title Co.*, 51 Mont. 190, 149 Pac. 975, but the difficulty with plaintiffs' argument is that the trial court found there was no oral agreement for additional time within which to complete the building.

It is urged by plaintiffs that the evidence conclusively shows [4] that the changes ordered by defendant could not be considered as reasonable changes within the purport and meaning of that term as used in building contracts similar to the one in question and as understood by architects and contractors within that part of Montana, and therefore the plaintiffs could not be considered as bound by the time provision of the contract of March 30 if the changes and alterations that were made and ordered were the cause of any delays in the construction of the building. We do not agree with this argument. The original contract was made March 30. The first additional agreement, made May 16, containing an additional consideration of $586, provided for certain alterations and additions. May 29 other alterations and additions were agreed upon, consideration $3,090. Were these changes un-

reasonable so as not to come within the contract or specifications? We interpret the contract to mean that the term "reasonable" is used therein as determining whether the contractor may be required to make the alterations or additions asked for; if they are unreasonable, then the contractor cannot be required to make them. But in this case plaintiffs did not contend, when the alterations and additions were proposed, that they were unreasonable. Upon the contrary, the plaintiffs agreed to make them for an additional consideration, without any demand for additional time in which to complete the building. If the contractor is of the opinion that he cannot make the alterations, changes or additions because they are unreasonable in his judgment, under the contract he may make his objection to the architects or the owner, but he can hardly be heard to say, after he has agreed to make the alterations or additions for an increased consideration, that they, the changes or alterations, are unreasonable. If the changes are such that the building could not be completed within the time limit, the contractor may make a demand for an extension of time in the manner provided in the contract. The right to demand such an extension was, no doubt, put in the agreement to cover just such a contingency or situation as existed here between the parties in this case. The consideration was paid to the plaintiffs, not only to furnish the labor and materials for the construction of the building, but also to complete it by October 1.

But it is contended that the provision for completing the building by October 1 had reference to the building for which the plans and specifications were then drawn, and that the changes made by the subsequent agreements were not comprehended in the original agreement of March 30. The original and subsequent agreements were intended to constitute one agreement. They all relate to the same subject matter. The contract of May 16 refers to the agreement of March 30 and provides for certain alterations and additions in the building to be constructed. To the same effect is the agreement of May

29.  "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."    (Sec. 7533, Rev. Codes 1921; *Lyon* v. *Dailey Copper Co.*, 46 Mont. 108, 126 Pac. 931.)

We are of the opinion that the parties, having entered into the agreement providing that no additional time for completion should be allowed unless a claim therefor was made in writing, should be bound by such provision, and that plaintiffs, not having proceeded as provided in said contract, for an extension of time, were required to complete it by October 1.  If the plaintiffs chose not to abide by the contract or avail themselves of the provisions which were made for their own benefit, then they must bear the consequences.  (*Wortman* v. *Kleinschmidt, supra; William P. Jungclaus Co.* v. *Ratti,* 67 Ind. App. 84, 118 N. E. 966.)  In the latter case the court said: "If it be said that the provision requiring the presentation of a written claim is harsh, the answer is well put in the case of *Davis* v. *La Crosse etc. Assn., supra,* in which the court said (121 Wis., on pages 587, 588, 99 N. W., on page 354, 1 Ann. Cas. 950) : 'Parties have a perfect right to make harsh provisions in their contracts if they see fit.  If they do, courts should not sit to revise them.  Their duty is to enforce the contracts as they find them, regardless of consequences, when no invalidity is involved nor public policy violated, and no mutual mistake or fraud, nor clear evidence of modification.  Stipulations of the kind under consideration are uniformly enforced.' "

Plaintiffs urge that, since the building was not completed on **[5]**   October 1, 1916, but that the defendant allowed them to continue the work as before and continued the payment of monthly estimates after October 1, and did not notify the plaintiffs they expected to insist upon damages for delay in the completion of the building after October 1, the presumption is the breach was waived, and consequently defendant may not now insist upon or counterclaim for damages caused them because of the failure to have the building completed by

October 1, citing *Wortman* v. *Montana C. Ry. Co.*, 22 Mont. 266, 56 Pac. 316. This case, however, is not authority for counsel's contention. The action was brought to recover profits which Wortman alleged he would have realized if he had been allowed to complete his contract, which called for a completion of the work by August 1, 1893. He was allowed to continue the work until the month of October, 1893. The court held that, if Wortman was allowed to continue the work after the date at which the work should have been completed, then the presumption would arise that the breach was waived by defendant, and that it intended Wortman should have a reasonable time after the date fixed in the contract to complete the work. The defense of the defendant was that the work was not completed within the time specified in the contract. The court in this case was not dealing with the right of the defendant to recoup or counterclaim for damages for the delay in performing the work within the time specified in the contract, as that was not an element in the case. The action was to recover for profits to be realized under the contract, and the decision goes no further than to hold that the effect of permitting the contractor to continue the work after the date of completion as specified in the contract creates the presumption that any right the owner may have had or asserted to plead the delay as a defense to an action for the contract price is waived. But the decision is not authority for the assertion that the defendant waived its right to counterclaim for any actual damages it might have suffered by reason of the delay. The fact that the defendant in the case at bar allowed plaintiffs to continue the work and paid them therefor the monthly estimates after October 1 does not estop defendant from counterclaiming for the damages for the loss of the use of the building subsequent to October 1, and until it was completed. (*Bryson* v. *McCone*, 121 Cal. 153, 53 Pac. 637; *Snell* v. *Cottingham*, 72 Ill. 161; *Crocker-Wheeler Co.* v. *Varick Realty Co.*, 43 Misc. Rep. 645, 88 N. Y. Supp. 412; *Richard Deeves & Son* v. *Life Ins. Co.*, 195 N. Y. 324, 88 N. E. 395; *McIntire* v.

*Barnes,* 4 Colo. 285; *Northwestern Mfg. Co.* v. *Great Lakes Engineering Works,* 181 Fed. 38, 104 C. C. A. 52.)

The district court found the reasonable, usable rental value [6] of the building from October 1, 1916, to January 20, 1917, to be the sum of $7,222.70. Error is assigned upon this finding for the reason that the evidence offered shows what the building could have been actually rented for, but it does not take into consideration any item of expense or maintenance which the owner was to provide, such as heat, light, janitor service, and engineering expense, or any other item of maintenance, which should be deducted from any gross rental income—citing *Haggerty Bros.* v. *Lash,* 34 Mont. 517, 87 Pac. 907, where the court said: "1. The objection made to instruction No. 10 is that it does not submit a correct rule or standard for determining the amount of damages. Whatever may be the decisions in other jurisdictions as to the correctness of such an instruction, it has been condemned by this court, and the giving of such an instruction has been declared to be prejudicial error. In *Brunell* v. *Cook,* 13 Mont. 497, 34 Pac. 1015, a similar instruction was given, and on appeal this court said in effect that such an instruction submits to the jury the gross earnings of the property as the measure of damages for its wrongful detention, whereas the actual damages is all that should be recovered. In other words, from the gross earnings of the property there should be deducted the expense, if any, of feeding and caring for the property. For thirteen years the rule announced in *Brunell* v. *Cook* has remained the law of this state upon the subject, and we are not now inclined to depart from it. Accepting that doctrine, then, this instruction is erroneous in any view of the case."

The defendant alleges in its brief that it amply proved the "fair rental value" of the premises, and that "The true ruling for damages in the case at bar is the amount which may be estimated as the fair rental value for that period from the date specified in the contract—October 1, 1916—to the time

when the building was turned over to the respondent (defendant herein)."

The rule for determining damages for the loss of the use of property in this state was announced in the case of *Haggerty Bros.* v. *Lash, supra,* following the case of *Brunell* v. *Cook,* 13 Mont. 497, 34 Pac. 1015, *supra.* The actual damages, and not the gross earnings of the property, are all that may be recovered. It is true these cases had reference to personal property, but the principle applies as well to real estate. (*Reich* v. *Colwell Land Co.,* 21 N. Y. Supp. 495.) In *Haggerty Bros.* v. *Lash, supra,* the court held that, the horses being out of the possession of plaintiff, he was not required to pay for their care and keep; consequently his actual damages were the value of their use, less the expenses of their maintenance.

Applying the same rule to the case at bar, then, the actual damages of defendant for the loss of the use of the premises from October 1, 1916, to January 20, 1917, are the gross earnings of the property less any expenses of maintenance it was not required to expend as the property was not in condition to be used, but which it would have been required to expend if the property had been completed on time and used by the tenants during that period.

We are of the opinion the district court should have followed the rule laid down in *Haggerty Bros.* v. *Lash, supra,* in determining the amount of defendant's damages for failure to complete the building by October 1, 1916.

Defendant urges that the mechanic's lien is invalid because [7] the account is not verified as a just account, citing *Crane & Ordway Co.* v. *Baatz,* 53 Mont. 438, 164 Pac. 533; sec. 8340, Rev. Codes 1921. No objection is made to the lien or verification in other respects. The notice of lien sets forth the contract and agreements for alterations and additions, the furnishing of the materials and performance of the work, and the balance due. The verification alleges: " * * * That said notice of lien and statement of account is true; that the said statement contains a full and true account of the amount

due the said Leigland & Kleppe, copartners, for the construction and completion of said building therein described after allowing all credits and offsets. *   *   *   "

The statute requires the lien to be verified as "a just and true account of the amount due him, after allowing all credits. *   *   *   " (Sec. 8340, Rev. Codes 1921.) Both the notice of lien and verification are signed by M. S. Kleppe for the copartnership; and the affidavit of verification contains a jurat showing it was subscribed and sworn to before a notary public. The lien is valid for the amount due plaintiffs, and is prior and superior to the rights of defendant Union Bank & Trust Company. (*Mills* v. *Olsen,* 43 Mont. 129, 115 Pac. 33; *Wertz* v. *Lamb,* 43 Mont. 477, 117 Pac. 89.)

We therefore recommend that the order be affirmed and that the judgment appealed from be affirmed in part, as herein expressed, and that the cause be remanded to the district court for further hearing and modification on the question of defendant's damages.

PER CURIAM: For the reasons given in the foregoing opinion the order is affirmed, and the judgment appealed from is affirmed in part, as expressed in this opinion, and the cause is remanded to the district court for further hearing and modification on the question of defendant's damages. Each party will pay its own costs on appeal.

Rehearing denied September 11, 1922.